216 So.2d 127 (1968)
HARGROVE, GUYTON, VAN HOOK & RAMEY et al., Plaintiffs-Appellees,
v.
Newton Crain BLANCHARD, Jr., Defendant-Appellant.
No. 11096.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1968.
Rehearing Denied December 3, 1968.
Writ Refused January 24, 1969.
*128 Pugh & Nelson, Shreveport, for defendant-appellant.
Cook, Clark, Egan, Yancey & King, Shreveport, for plaintiffs-appellees.
Before AYRES, BOLIN and PRICE, JJ.
BOLIN, Judge.
Hargrove, Guyton, Van Hook & Ramey, attorneys, joined by the law firm of Booth, Lockard, Jack, Pleasant & LeSage, sued Newton Crain Blanchard, Jr. for attorneys' fees totalling $18,155, subject to a credit of $4,726.32 held in a trust account by the Hargrove firm. After filing certain *129 preliminary motions, including pleas of prescription and improper cumulation of actions, defendant filed an answer and requested a trial by jury. The jury rendered a verdict in favor of the Hargrove firm in the full sum of $18,155, which award included the fees of the Booth firm. Against this total amount was to be credited the sum of $4,726.32 and the lower court awarded 5% interest per annum on the balance from judicial demand until paid. From this judgment defendant appeals and plaintiffs answer the appeal asking for interest on a portion of the total award from the date due until paid.
The primary issues are:
1. The validity of defendant's plea of prescription as to legal services rendered by either or both of the legal firms;
2. The reasonableness of the fees.
The services of Hargrove, et al, were performed by James A. Van Hook and those of Booth, et al, were performed by Whitfield Jack. Van Hook and Blanchard were lifelong friends and Van Hook had represented Blanchard on numerous prior occasions, most of the services being related to titles and property transactions.
In 1961 defendant's wife instituted suit against him for separation from bed and board. Shortly after this suit was filed defendant consulted Van Hook and requested he represent him in that litigation. Van Hook told Blanchard he had not handled any domestic cases for many years and suggested he be permitted to associate with him Mr. Whitfield Jack, an experienced trial lawyer, for the purpose of handling this case. Having obtained defendant's permission Van Hook contacted Jack and made arrangements with him to assist him in the proper representation of Blanchard. At the time defendant employed Van Hook the only agreement relative to a fee was that Van Hook was to be paid on an hourly basis at the rate of $30 per hour. Blanchard had no agreement with Jack as to his fee. However, there was an understanding between Van Hook and Jack that the latter would charge according to the nature and time of work involved and that his fee would be extremely high if the case were hotly contested.
During the trial below Van Hook and Jack outlined in detail the services rendered by them. We see no necessity of burdening this record with a recapitulation of this testimony. Suffice it to say Mr. and Mrs. Blanchard were involved in an extremely hard-fought domestic case lasting for several years. Van Hook kept a log of the work performed by him and other members of his firm which totalled 514.6 hours. Mr. Jack performed services from July 24, 1961 to April 3, 1962, for which he rendered a statement to Van Hook but addressed to Blanchard for $3,250. While not employed on an hourly basis Jack testified he did keep a record of this work performed by him and that his total fee amounted to approximately $50 per hour.
Testifying for plaintiff with respect to the reasonableness of the fees charged were James Phillip Goode, president of the Shreveport Bar Association, and Samuel P. Love, a Shreveport attorney whose firm represented Mrs. Blanchard in the divorce proceeding. The record shows Mr. Love is a respected member of the local bar and probably has had more experience in the trial of domestic cases than any other member of the Shreveport Bar. For his services in representing Mrs. Blanchard he received a fee of $21,000. It was his opinion that this case was the most tedious and unpleasant domestic case he had been involved in since he began the practice of law. He further concluded the fee charged by Van Hook for the services rendered was very reasonable. Mr. Goode was asked a hypothetical question of whether he considered the fee to be reasonable based upon the alleged number of hours spent on the case by Van Hook and the work performed by Jack and he unhesitatingly *130 stated he considered the fee to be reasonable.
Defendant offered no expert testimony to contradict that of plaintiffs' relative to the value of the services performed. As to quantum, the defense was primarily that Van Hook did not periodically notify defendant of the work being performed, the progress being made in connection with the case and the charges as they accumulated. Defendant further contends the fees were unreasonable in that Mrs. Blanchard was ultimately successful in her suit against defendant, thereby inferring Van Hook and Jack did not properly represent Mr. Blanchard. Defendant also specifies the trial judge committed error in refusing to give certain instructions and charges to the jury.
Regarding specifications of error in charges to the jury we are convinced the charges correctly state the law. This court had the duty of reviewing the entire record, including exhibits and the transcript of testimony, and from our review we conclude Van Hook and Jack performed sufficient legal services to justify the award made by the jury. Both are eminently well-qualified and experienced attorneys and their integrity is unquestioned. The record convinces us they represented Mr. Blanchard well and tirelessly over a long period of time. An attorney is entitled to be paid for his services, and the amount of his compensation is not necessarily based upon whether he wins or loses.
Elements to be considered in evaluating the attorneys' services are the extent and nature of the litigation; the amount involved and the difficulty of locating, identifying and classifying every item of property, whether separate or community, for the purpose of the property settlement; the number of hours spent in courtroom, research, conferences and preparation of pleadings; the learning, skill and experience of counsel and the cooperation or lack thereof of the client and the latter's ability to pay. See McGovern v. Gilbert, 127 So. 2d 93 (La.App.4 Cir.1961); Henriques v. Vaccaro, 218 La. 1020, 51 So.2d 611 (1951) and Wegmann v. Suggs, 147 So.2d 263 (La.App.4 Cir.1962).
The fact that Van Hook did not send periodic statements to Blanchard is of no consequence since the former had been counsel for the latter for many years and there was no particular occasion for him to send defendant a statement until his services were no longer needed.
We consider the most important issue relates to the plea of prescription. Louisiana Civil Code Article 3538 provides:
"The following actions are prescribed by three years:

* * * * * *
"That of parish recorders, sheriffs, clerks and attorneys for their fees and emoluments."

* * * * * *
Suit was filed on August 2, 1967. Defendant contends the plea of prescription as to Van Hook's claim should be sustained for a number of reasons. First, it is claimed the total fee is made up of several separate claims for services rendered and that prescription should begin to run on each service as it was rendered. It is further contended that the last legal work done by Van Hook was in July, 1964, which was more than three years prior to the date suit was filed.
Both the issue of prescription and that of quantum were submitted to the jury. On the issue of prescription of the claim of Mr. Van Hook, Blanchard testified he had "dismissed" Van Hook some time during July 1964. Van Hook testified he performed services of a tangible nature for defendant until August 6, 1964 and on August 10 he wrote defendant a letter recapitulating his charges and advising Blanchard that unless the fees were paid by August 14, 1964 he would withdraw from the suit. Since the bill remained unpaid he did withdraw as counsel on August 20 when another *131 attorney was enrolled as counsel for Blanchard. He testified that although relations between him and his client had become strained he considered he was responsible to Blanchard for any necessary legal representation until such time as he withdrew as attorney of record. It was this testimony upon which the jury must have found that Van Hook did in fact remain responsible for representation of Blanchard at least until August 14, 1964.
In the case of Lyons v. Hall, 90 So.2d 519, 60 A.L.R.2d 1003 (La.App.2 Cir.1956) this court held that where an attorney did nothing, after obtaining annulment of a default judgment, until five years later when he filed a motion to dismiss the suit for failure to prosecute, nevertheless, the three-year prescription did not commence to run until such dismissal. More recently in the case of Mouton, Champagne & Colomb v. Bourgeois, 208 So.2d 546 (La.App.3 Cir.1968) it was held that an attorney who, through no fault of his own, had never completed the legal services for which he had been employed was not barred by prescription in a suit to recover for legal services performed some nine or ten years before. The court there held the prescription did not begin to run until the contract of employment terminated which was within the three years prior to the filing of the suit, citing Lyons v. Hall, supra.
In the instant case Blanchard employed this firm on a continuing basis and we consider the evidence ample to support a jury finding that three years had not elapsed between the termination of services and the filing of suit and thus prescription had not run on this claim.
Admittedly, Jack rendered no legal services after April 3, 1962. Therefore, if he had been employed by defendant his claim would be prescribed under Louisiana Civil Code Article 3538. However, it is the theory of plaintiffs' case that Jack was not employed by defendant but was employed by the Hargrove firm to assist in representing defendant, in which event the plea of prescription leveled at Jack's portion of the total fee would fall under the same reasoning applied to the prescriptive plea filed against Hargrove, et al. There can be no question that Van Hook had the authority to associate Jack in the case and that defendant specifically gave him permission to employ Jack. There is likewise no question that Jack is entitled to a fee and Hargrove, et al concedes such in brief. We consider the services performed by Mr. Jack for Blanchard, at the request of Mr. Van Hook, constituted a portion of the overall continuing services performed for defendant for which he is indebted to Hargrove, et al in the total amount of $18,155 subject to a credit of $4,726.32 previously paid by order of the court. Therefore, this plea of prescription was properly rejected.
Plaintiffs have answered the appeal and asked that the judgment appealed from be amended to provide interest at the rate of 5% per annum on $13,428.68 from August 15, 1964 until paid, instead of from judicial demand until paid. This claim is based on the fact that a statement was mailed to defendant on August 15, 1964, denoting such amount was due and that under the jurisprudence interest is due from such date rather than judicial demand. We find this contention is well founded and supported by the decision in Carey v. Sentell, 64 So.2d 451 (La.App.2 Cir.1953) wherein this court held a claim for professional services becomes due upon completion of such services, and interest commences to run from date of a bill rendered. See also La.C.C.Art.1938.
For the reasons assigned the judgment appealed from is amended to allow interest at the rate of 5% per annum on $13,428.68 from August 15, 1964 until paid. As amended the judgment is affirmed at appellant's cost.